112 August 12, 2026 No. 757

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

A. L. T.
*Petitioner-Respondent,*

*v.*

RICHARD DUSTIN O'DELL,
*Respondent-Appellant.*

Marion County Circuit Court
25SK02637; A188833

Amy M. Queen, Judge.

Submitted June 3, 2026.

Andy Simrin and Andy Simrin PC filed the brief for appellant.

No appearance for respondent.

Before Aoyagi, Presiding Judge, Egan, Judge, and Pagán, Judge.

AOYAGI, P. J.

Affirmed.

**AOYAGI, P. J.**

Respondent appeals a judgment granting a permanent stalking protective order (SPO) against him for the protection of petitioner. In four assignments of error, he contends that the trial court erred by (1) denying his motion for a directed verdict; (2) deciding the case without allowing his counsel to make a closing argument as provided in ORCP 58; (3) finding that respondent engaged in two or more unwanted contacts that caused petitioner objectively reasonable alarm; and (4) issuing the permanent SPO. As explained more below, we reject each claim of error. The trial court properly denied the motion for a directed verdict, as the evidence was legally sufficient to go to the factfinder. Regarding the lack of closing argument, no objection was made, and we disagree that preservation is excused, so our review is limited to plain error, and the trial court did not plainly err because it is not obvious that ORCP 58 applies. Finally, the court's findings are supported by evidence in the record, and respondent has identified no error in its application of the law to those facts. Accordingly, we affirm.

## FACTS[1]

The parties dated for five or six months in early 2025. They broke up once in May 2025, but soon resumed their relationship, then broke up again in June 2025 after returning from a trip to Las Vegas. Petitioner "blocked" respondent afterwards.

On June 28, 2025, petitioner left work around 2:30 a.m. She found that respondent had placed on her car some shower items that she had left at his apartment. Petitioner pulled out of the parking lot and stopped at the stop sign to get onto the freeway. Respondent came up behind her in his car, flashing his brights, then followed

[1] The only testimony at the SPO hearing was that of petitioner and her mother, and, based on its findings, the trial court credited that testimony in full. As such, the facts stated in the light most favorable to petitioner (as relevant to review of a directed-verdict ruling) are the same as the facts found by the trial court (as relevant to review of the ultimate disposition). We therefore provide a single statement of the facts, focusing on the evidence on which the trial court relied in granting the SPO.

her onto the freeway, where he pulled beside her.[2] They both rolled down their windows, and respondent said, "Unblock me." Petitioner called respondent on the phone and told him to stop. He told her to pull over, and she said no. Respondent was still in the lane next to hers and said that he would "make" her. He swerved into petitioner's lane, causing her to swerve. Petitioner kept driving on the freeway, and respondent eventually pulled over near a rest stop, while petitioner continued home. They stayed on the phone. Respondent was initially yelling but then calmed down, asked petitioner about school, and told her that she would never hear from him again if they did not make up. Petitioner told respondent that she did not want to talk to him and did not want to make up.

On June 29, 2025, petitioner drove home from work around 3:30 a.m. Petitioner lives with her mother "on a dead end in the middle of nowhere." As she was driving down her street, a car passed her, then turned around and followed her. Petitioner was scared. She called her mother and told her that a car was behind her and that she thought it was respondent. Petitioner's mother relayed that she had just seen a car drive by their house and turn around. The car chased petitioner's car up the hill into her driveway. Petitioner "saw him" at that point. Petitioner exited her car and ran into the house. Petitioner's mother went outside with a bat in hand. Respondent, who had pulled into the driveway, "pulled back and left." Petitioner's mother could not see the driver in the dark, but petitioner said it was respondent. Petitioner called the police to report the incident. Later that night, respondent sent petitioner a Facebook message, mocking her job and telling her that she had made an enemy for life.

Petitioner filed for an SPO on June 30, 2025. Petitioner and her mother testified to the facts stated above. At the conclusion of petitioner's evidence, respondent moved for a directed verdict. His argument focused on the evidence regarding events prior to June 28 (not recounted herein). The trial court denied the motion, ruling that the evidence

---

[2] As discussed more later, petitioner used "he" and "him" in her testimony, rather than respondent's name, but it is reasonable to infer that she meant respondent.

was legally sufficient for an SPO based on the incidents on June 28 and 29.

After denying the directed-verdict motion, the trial court asked respondent's counsel, "Do you have any evidence you'd like to present?" Counsel said no.

The court proceeded to announce that it was granting the permanent SPO. The court stated that petitioner had "absolutely met her burden of proof." It found that respondent engaged in unwanted contact with petitioner on June 28 and 29, that petitioner was alarmed by those contacts, that it was objectively reasonable to be alarmed by those contacts, that the repeated and unwanted contact caused petitioner reasonable apprehension regarding her own personal safety, and that respondent posed a credible threat to petitioner's safety.

## DENIAL OF DIRECTED VERDICT

Respondent first assigns error to the denial of his motion for a directed verdict. Because the matter was heard by the court, that motion is better characterized as a motion to dismiss based on insufficient evidence. *Cf. Oregon Psychiatric Partners v. Henry*, 293 Or App 471, 473 n 2, 429 P3d 399 (2018) ("[i]n a bench trial, a defendant's motion for directed verdict is better understood as an ORCP 54 B(2) motion for involuntary dismissal").

ORS 30.866(1) allows a petitioner to bring a civil action for an SPO if:

"(a)   The respondent intentionally, knowingly or recklessly engages in repeated[3] and unwanted contact[4] with the petitioner or a member of the petitioner's immediate family or household thereby alarming or coercing the petitioner;

---

[3] Two qualifying contacts within two years of the commencement of the action meet the standard for "repeated." ORS 163.730(9) ("'Repeated' means two or more times."); ORS 30.866(6) ("An action under this section must be commenced within two years of the conduct giving rise to the claim.").

[4] "Contact" is broadly defined and includes, *inter alia*, following a person, waiting outside a person's home or place of work, or committing a crime against a person. ORS 163.730(3)(b), (c), (g).

"(b)   It is objectively reasonable for a person in the petitioner's situation to have been alarmed or coerced by the contact; and

"(c)   The repeated and unwanted contact causes the petitioner reasonable apprehension regarding the personal safety of the petitioner or a member of the petitioner's immediate family or household."

The trial court may enter a temporary SPO if it finds probable cause based on the allegations in the petition. ORS 30.866(2). The petition and temporary order must then be served on the respondent with an order requiring the respondent to personally appear in court to show cause why the temporary order should not be continued indefinitely. *Id*.

At the hearing, the standard of proof is a preponderance of the evidence. ORS 30.866(7).

The question is whether petitioner's evidence was legally insufficient to support the issuance of a permanent SPO, such that respondent's motion should have been granted and the case dismissed as a matter of law. *Delgado v. Souders*, 334 Or 122, 130, 46 P3d 729 (2002). In answering that question, "we must view the evidence in the record, and all reasonable inferences to be drawn therefrom, in favor of [petitioner], the nonmoving party." *Id*. at 134. So viewing the evidence, and keeping in mind that a petitioner may rely on circumstantial evidence and reasonable inferences to prove the elements of an SPO, we must determine whether the evidence would allow a reasonable person to find each of the required elements proved by a preponderance of the evidence. *Id*. at 134-35. "[I]t is a question of law whether the evidence presented was sufficient to support the elements required to obtain an SPO." *Id*. at 134. It is also a question of law "whether the evidence presented is sufficient to support a particular inference." *Id*. at 135. Petitioner is entitled to the benefit of reasonable inferences, but not impermissible speculation. *Id*. at 134-35; *State v. Campbell*, 348 Or App 306, 310, 590 P3d 612 (2026).

On appeal, respondent's legal-insufficiency argument turns entirely on petitioner's use of "he" and "him" to refer to the other driver on June 28 and 29. Respondent does not contest that the evidence was legally sufficient for an

SPO if he was the driver of the other vehicle during those incidents. He argues, however, that the evidence was legally insufficient to prove that he was the other driver, particularly as to the June 29 incident, because petitioner did not use his name in her testimony and because petitioner's mother did not see the other driver on June 29.

We are unpersuaded. As an initial matter, respondent did not argue to the trial court that the evidence was legally insufficient to prove that he was the other driver on June 28 and 29. Having not sought dismissal on that basis, respondent has a preservation problem. *See State v. K. J. B.*, 362 Or 777, 791, 416 P3d 291 (2018) ("As a rule, an objection as to the legal insufficiency of evidence to prove a claim on one theory does not have the effect of preserving all other possible theories of insufficiency; rather, parties must explain to the court and opposing party a specific reason for the asserted legal insufficiency."). The argument also fails on the merits in any event.

Petitioner alleged in her petition that *respondent* made her afraid for her physical safety when "he intentionally tried hitting [her] car" and "when he tailed [her] into [her] driveway with his car." The trial court asked petitioner about those specific allegations when she testified. It quoted the allegations and asked petitioner to describe those incidents, which is when she testified to the June 28 and 29 incidents. In context, it is readily apparent that petitioner was referring to respondent when she said "he" and "him."[5] Moreover, petitioner obviously saw respondent during the June 28 incident, as he spoke to her through their open car windows, and she then called him on the phone and talked to him at length. As for the June 29 incident, although petitioner's mother could not see into the other car in the dark, and petitioner initially was not certain who was following her, the trial court specifically asked petitioner whether she "saw him" once they were in the driveway, and she answered yes. The evidence was legally sufficient to go to the factfinder, so the court did not err in denying respondent's motion.

---

[5] It seems likely that respondent did not move to dismiss on this basis because it was obvious to everyone in the room that petitioner was referring to respondent. If that was not the case, then, had such a motion been made, this issue likely would have been conclusively resolved on the record.

## ULTIMATE FINDINGS AND ISSUANCE OF SPO

We next address the third and fourth assignments of error, in which respondent challenges the trial court's factual findings and ultimate decision to issue a permanent SPO. Whereas the first assignment of error required us to determine whether the evidence in the record was legally sufficient to support an SPO, the third and fourth assignments of error require us to determine whether the facts found by the trial court at the conclusion of the hearing were supported by evidence and, ultimately, whether those facts allowed the trial court to reach the disposition it did upon application of the law. *See S. A. B. v. Roach*, 249 Or App 579, 580, 277 P3d 628 (2012) ("[W]e review the facts for any evidence and the legal conclusions based on those facts for errors of law. Our task is to review the facts found by the trial court to determine whether they are supported by any evidence, and then to determine whether, as a matter of law, those facts together with facts implicitly found by the trial court, provide a basis for issuance of an SPO under ORS 30.866." (Internal quotation marks, citation, and brackets omitted.)).

In this case, the trial court credited the witnesses' testimony, and it made express and implied findings consistent with the facts stated above, including finding that respondent was the other driver on June 28 and 29. As explained in the last section, the evidence allowed a reasonable inference that respondent was the other driver in both incidents. The trial court's finding on that issue is therefore supported by evidence. Respondent has not challenged any other factual finding by the trial court, nor has he identified any error in how the trial court applied the law. We therefore reject the third and fourth assignments of error.

## LACK OF CLOSING ARGUMENT

We conclude with the second assignment of error. Respondent contends that the trial court violated ORCP 58 by not allowing his counsel to make a closing argument before the court announced its decision. Neither party made an opening statement or a closing argument, and there was no discussion of that fact with the court.

Respondent acknowledges that he did not preserve his claim of error. He urges us to excuse preservation, arguing that he "had no opportunity to object" before the court ruled and that any objection made after it started to rule would have been futile as the court had already made up its mind. We decline to excuse preservation. When the trial court began to announce its decision, respondent could have interjected and asked to make a closing argument. Although the court had not asked for closing arguments, it also had not foreclosed them, and nothing in this record suggests that it would have been hostile to a request, even one interjected once respondent realized the court was starting to announce its decision. *Cf. L. M. B. v. Cohn*, 298 Or App 782, 784 & n 2, 450 P3d 50 (2019) (excusing preservation, as to claim that the evidence was legally insufficient to support an SPO, where, during the respondent's testimony, the trial court suddenly stated, "I've heard enough," announced its decision, would not allow respondent to respond, and stated, "No, we're done here."). As for respondent's futility argument, although the court may have made up its mind in the sense that it was ready to rule based on the evidence, it does not follow that requesting closing argument would have been "futile." There is no reason to assume that the court would have denied the request (which is how futility is normally assessed). Moreover, if the court agreed to hear closing arguments, whether as a matter of discretion or right, we presume that it would have listened to them and properly considered them.

We therefore do not excuse preservation. It follows that our review is limited to plain error, which petitioner requests in the alternative. *See State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000) ("Generally, an issue not preserved in the trial court will not be considered on appeal."); ORAP 5.45(1) (giving us discretion to consider "plain" errors). An error is "plain" when it is an error of law, the legal point is obvious and not reasonably in dispute, and the error is apparent on the record without our having to choose among competing inferences. *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). Whether an error is "plain" is a question of law. *State v. Gornick*, 340 Or 160, 167, 130 P3d 780 (2006). It is a matter of discretion whether to correct a plain error

that was not harmless. *State v. Ortiz*, 372 Or 658, 672, 554 P3d 796 (2024).

Here, we conclude that any error is not plain. Respondent contends that he was entitled to two hours of closing argument under ORCP 58. ORCP 58 is a civil procedure rule regarding "trial" proceedings, both "by the court" and "by a jury." Trial by jury is subject to the procedures set forth in all nine subsections of ORCP 58 B. *See* ORCP 58 B ("Trial by a jury shall proceed in the following manner unless the court, for good cause stated in the record, otherwise directs: \*\*\*."). Trial to the court, by contrast, is subject only to the procedures set forth in subsections B(3) through B(6). *See* ORCP 58 A ("Trial by the court shall proceed in the manner prescribed in subsection B(3) through subsection B(6) of this rule, unless the court, for good cause stated in the record, otherwise directs.").

ORCP 58 B(6), applicable to both court and jury trials, states:

> "When the evidence is concluded, unless the case is submitted by both sides to the jury without argument, the plaintiff may commence and conclude the argument to the jury. The plaintiff may initially waive argument and, if the defendant then argues the case to the jury, the plaintiff will have the right to reply to the argument of the defendant, but not otherwise."

Meanwhile, ORCP 58 B(7), applicable only to jury trials, states, "Not more than two counsel may address the jury on behalf of the plaintiff or defendant. Plaintiff and defendant shall each be afforded a minimum of two hours to address the jury, irrespective of how that time is allocated among that side's counsel."[6]

To begin, respondent was not entitled to two hours of closing argument. That argument is based on ORCP 58 B(7), which applies only to jury trials. *See* ORCP 58 A (providing that only subsections B(3) through B(6) apply in a trial by the court).

---

[6] *See State v. Doern*, 156 Or App 566, 571, 967 P2d 1230 (1998), *rev den*, 328 Or 666 (1999) (concluding, based on an earlier version of ORCP 58 B(7), that there was "no question" that it "violated ORCP 58 B" to limit closing argument to the jury to 20 minutes).

As for being entitled to some closing argument, ORCP 58 B(6) suggests a right to closing argument in both court trials and jury trials. And an SPO proceeding is a "civil action," ORS 30.866, to which the Oregon Rules of Civil Procedure apply, *Falkenstein v. Falkenstein*, 236 Or App 445, 449, 236 P3d 798 (2010). But it is not obvious and is reasonably in dispute whether an SPO hearing qualifies as a "[t]rial by the court" within the meaning of ORCP 58 A. ORS 30.866 provides for a permanent SPO to be decided after a hearing on a show-cause order. ORS 30.866(2) (providing for the respondent to be ordered to "personally appear before the court to show cause why the temporary order should not be continued for an indefinite period"); ORS 30.866(3)(a) (providing for a "hearing" on the show-cause order). It is debatable whether a show-cause hearing is a "[t]rial by the court" within the meaning of ORCP 58 A.

We therefore conclude that it was not plain error for the trial court to announce its decision on the permanent SPO without first requesting closing arguments.

Affirmed.